UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DANIEL BOVENSIEP,<br><br>                               Petitioner,<br><br>v.<br><br>DEAN BORDERS, Warden,<br><br>                             Respondent. | Case No.:  17-cv-0074-GPC-AHG<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION DENYING PETITIONER'S FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**<br><br>**[ECF Nos. 1, 24]** |

Presently before this Court is a First Amended Petition ("FAP") for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, filed by Petitioner Thomas Daniel Bovensiep ("Petitioner"), a state prisoner proceeding *pro se*.  (ECF No. 10.)  In his petition, Petitioner seeks to challenge his 2015 conviction in San Diego Superior Court for thirteen counts of grand theft and two counts of security fraud.  (ECF No. 10.)  On April 18, 2018, Respondent, Dean Borders, Warden, filed a Response and supporting Lodgments.

1

(ECF Nos. 19, 20.)[1]  Petitioner filed a Traverse on May 22, 2018.  (ECF No. 23.)  On October 24, 2018, Magistrate Judge Nita L. Stormes issued a Report and Recommendation ("Report") recommending that this Court deny the Petition.  (ECF No. 24.)  On November 8, 2018, Petitioner filed objections ("Objections") to the Magistrate Judge's Report.  (ECF No. 25.)  After a thorough review of the issues, supporting documents, and applicable law, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety, **OVERRULES** Petitioner's objections, **DENIES** the petition for writ of habeas corpus, and **DENIES** a certificate of appealability.

## PROCEDURAL BACKGROUND

On February 14, 2013, the San Diego County District Attorney's Office filed a Felony Complaint against Petitioner.  (Lodgment No. 5, Clerk's Transcript ["CT"] at 1-8.)  On December 9, 2013, the complaint was amended, charging Petitioner with eighteen counts of grand theft in violation of California Penal Code § 487(a), three counts of misrepresentation in the sale of securities in violation of California Corporations Code §§ 25401 and 25440, and six counts of filing a false tax return in violation of California Revenue and Taxation Code § 19705(a)(1).  (CT at 9-21.)  The Amended Complaint alleged that Petitioner stole in excess of $50,000 as to three of the grand theft counts; in excess of $65,000 as to three of the grand theft counts; and in excess of $150,000 as to two of the grand theft counts.  (*Id*.)  Finally, the Amended Complaint alleged that Petitioner had stolen in excess of $500,000 in the course of his criminal conduct, within the meaning of California Penal Code § 186.11.  (*Id.*)

On March 17, 2015, following a jury trial, Petitioner was convicted of thirteen counts of grand theft and two counts of false statements in connection with sale of a security, and was found not guilty on the remaining counts.  (*Id.* at 507-34.)  The jury further found true two sentence enhancement allegations.  (*Id.* at 528.)  On May 29, 2015,

---

[1] References to Lodgments throughout this order refer to Lodgments submitted in ECF Nos. 15 and 20. ECF No. 15 contains Lodgments of State Court Records by Respondent for Lodgments 1, 2, 3, and 4. ECF No. 20 contains Lodgments of State Court Records by Respondent for Lodgments 5 and 6.

the trial court sentenced Petitioner to nine years and four months in state prison.  (*Id.* at 732-34, 843-46.)

On November 5, 2015, Petitioner appealed his conviction to the California Court of Appeal for the Fourth Appellate District.  (Lodgment No. 1.)  On appeal, Petitioner argued that (1) his convictions on all counts should be reversed because prejudicial delays in both investigating and bringing the matter to trial had violated Petitioner's federal and state constitutional rights to due process and a speedy trial, and (2) his convictions on ten of the fifteen counts should be revered because they were barred by the statute of limitations.  (*Id.*)  On August 22, 2016, the Court of Appeal affirmed all of the Petitioner's convictions in a written, unpublished decision.  (Lodgment No. 2.)  To exhaust his state court remedies, on September 21, 2016, Petitioner filed a petition for review in the California Supreme Court, which was summarily denied on October 26, 2016.  (Lodgment Nos. 3, 4.)

On January 5, 2017, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the Central District of California.  (ECF No. 1.)  On January 12, 2017, pursuant to 28 U.S.C. § 1404(a), the Central District of California transferred the Petition to this Court, the Southern District of California.  (EFC No. 4.)  On February 16, 2017, this Court dismissed the case without prejudice and with leave to amend because it was not clear from the Petition that Petitioner had exhausted his state judicial remedies.  (ECF No. 9.)

On March 10, 2017, Petitioner filed his First Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, proceeding *pro se*.  (ECF No. 10.)  Petitioner raised two grounds in his First Amended Petition: (1) "Federal Constitutional right to Speedy Trial including where there has been a substantial and/or prejudicial delay prior to accusatory pleading," and (2) "Federal Constitutional right to due process under 6th Amendment and Fundamental Fairness."  (*Id.*)  On August 31, 2017, Respondent moved to dismiss this Petition.  (ECF No. 14.)  On September 27, 2017, Petitioner filed a response in opposition to the motion to dismiss.  (ECF No. 16.)  On January 10, 2018,

17-cv-0074-GPC-AHG

Magistrate Judge Nita L. Stormes issued a Report denying the motion to dismiss.  (ECF No. 17.)  On March 19, 2018, this Court adopted the Report.  (ECF No. 18.)  On April 18, 2018, Respondent filed a Response to the Petition and supporting Lodgments.  (ECF Nos. 19, 20.)  Petitioner filed a Traverse on May 22, 2018.  (ECF No. 23.)  On October 24, 2018, Magistrate Judge Nita L. Stormes issued a Report, recommending that this Court deny the Petition.  (ECF No. 24.)  On November 8, 2018, Petitioner filed Objections to the Magistrate Judge's Report.  (ECF No. 25.)

**FACTUAL BACKGROUND**

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (state court findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness in federal habeas review); *Sumner v. Mata*, 449 U.S. 539, 547 (1981) (deference is owed to findings of state trial and appellate courts); *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990) (holding factual findings of state trial and appellate courts are entitled to presumption of correctness on federal habeas corpus review).  The following facts are taken from the California Court of Appeal opinion, denying Petitioner's direct appeal of his conviction.

**Ronald Dixon—Count 1**

In 2003, Bovensiep persuaded his pastor, Craig Knudsen, and Steven Zoumaras, a business acquaintance, to purchase shares in a limited liability company (LLC) for the purpose of purchasing a condominium located in Hawaii (the 835 property). Unbeknownst to the partners, Bovensiep listed his brother-in-law, John Oakes, as the owner telling Oakes that he wanted to use Oakes's good credit. Bovensiep told Oakes, who was not in on the scheme, that he would put the loan in the LLC's name, removing Oakes, as soon as Bovensiep refinanced the property. Bovensiep secretly refinanced the 835 property and took out a line of credit of over $114,000, but left Oakes listed as the owner of the property. Dixon, who had met Bovensiep through Oakes and his church, bought Zoumaras's interest in the 835

4

property for a total of $117,578 in June 2005. On Thanksgiving Day 2009, Dixon learned that the 835 property was being foreclosed.

**The Kneeshaws—Count 7**

George Kneeshaw and his wife, Terry, have known Bovensiep for over 35 years. George and Bovensiep had worked as deputy sheriffs together and they remained friends. In September 2007, the Kneeshaws, along with other individuals each invested about $60,000 toward the purchase of a condominium in Kihei, Maui (the Kihei property). Bovensiep managed the Kihei property. On December 5, 2009, the Kneeshaws learned that the Kihei property was facing foreclosure. At the end of December 2009, George reported the matter to the sheriff's department for a potential criminal investigation.

**The Kneeshaws—Counts 5, 8–11**

Bovensiep convinced the Kneeshaws to make a series of four separate loan investments, supposedly to people in need. The Kneeshaws were to receive monthly interest and a return of their principal after a specified time. Bovensiep made some interest payments, but never repaid the principal. Bovensiep later admitted to Trudianne Bullard, an investigator for the district attorney's office (DA), that he used the money himself to keep his scheme afloat.

**Frederick Semeit—Count 12**

Semeit, the Kneeshaws' son-in-law, believed he could trust Bovensiep as Bovensiep seemed like a really nice guy. Semeit purchased two homes using Bovensiep's services and also obtained a $5000 loan from Bovensiep, which Semeit repaid. After Semeit divorced, he gave Bovensiep a $10,000 down payment in February 2008 for a house. When the purchase allegedly fell through, Semeit gave Bovensiep another $15,000 and let Bovensiep keep his initial $10,000 with the understanding that Bovensiep would pay Semeit interest on the money and the debt would mature in November 2008. Semeit gave Bovensiep another $20,000, with a maturity date in October 2008. Semeit believed Bovensiep would be loaning the funds to a third party. Bovensiep never repaid Semeit.

**Chris Miller—Count 13**

In April 2008, Miller, a church friend of Bovensiep, gave Bovensiep a $48,000 down payment to purchase a condominium for Bovensiep to manage. Bovensiep eventually told Miller that escrow on the property had been cancelled and he would give Miller his money back. Bovensiep never paid Miller back. Bovensiep admitted to Bullard that when he got money

17-cv-0074-GPC-AHG

from Miller, he used it to pay someone else who had loaned him money and "lied" to Miller about where Miller's money was going.

**Robert Stevens—Count 18**

Karen Taylor's husband had invested money with Bovensiep and spoke very highly of Bovensiep. Taylor believed Bovensiep took the money to extend loans to third parties. Taylor referred two of her sisters, Laura Colling and Marsha Allen, and her best friend Diane Mullins to Bovensiep. Allen in turn referred her friend Patricia Osborne to Bovensiep. Mullins referred Stevens, her father, to Bovensiep.

In January 2007, Stevens invested $25,000 with Bovensiep and was to receive monthly interest and return of his principal after a specified time. Bovensiep never paid Stevens back. Bovensiep later admitted to Bullard that he led Stevens and others to believe the loans were for third parties, but that he used the money to keep his other schemes afloat.

(Lodgment No. 2 at 2-4.)

## STANDARD OF REVIEW

### I.    Review of the Magistrate Judge's Report and Recommendation

The district court's duties in connection with a magistrate judge's report and recommendation ("Report") are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1).  The district judge "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b).  The district court need not review de novo those portions of a Report to which neither party objects.  *U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).  When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974).

After Magistrate Judge Stormes issued a Report, Petitioner filed objections on November 8, 2018.  (ECF No. 25.) ("Objections").  In the Objections, Petitioner mainly reiterates arguments previously made, and generally challenges the Magistrate Judge's

Report in its entirety.  (See *id*. at 1.)  The Court reviews *de novo* the Magistrate Judge's findings and recommendations.

### A.    Review of Habeas Petitions

Federal habeas corpus relief is available only to those who are in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  "A federal court may not issue the writ on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "[A] mere error of state law is not a denial of due process."  *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) (internal quotations omitted).  "If it plainly appears from the face of the petition . . . that the petitioner is not entitled to relief . . . the judge shall make an order for summary dismissal."  *See Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990).  The facts alleged in the petition must be sufficiently specific to allow the Court to understand the claim.  *See id.* at 491-92.

### B.    AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Petition.  *See Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997).  AEDPA imposes a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citations and quotation marks omitted).  28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

17-cv-0074-GPC-AHG

The "clearly established Federal law" clause in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. *Duchaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000); *Robinson v. Ignacio*, 360 F.3d 1044, 1057 (9th Cir. 2004). A state court need not cite Supreme Court precedent when resolving a habeas corpus claim, "[s]o long as neither the reasoning nor the result of the state-court action contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S 3, 8 (2002) (per curiam).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if it "'applies a rule that contradicts the governing law set forth in [Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent.'" *Early*, 537 U.S. at 8 (quoting *Williams*, 529 U.S. at 405-06).

Under the "unreasonable application" clause, the Court may grant relief "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that the state court's application of clearly established federal law must be "objectively unreasonable"). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. 411. Under AEDPA, relief is also available where

17-cv-0074-GPC-AHG

the state court predicated its adjudication of a claim on an unreasonable factual determination. *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). This inquiry is explicitly limited to the evidence that was before the state court. 28 U.S.C. § 2254(d)(2).

A federal court uses the decision of the highest state court to make its habeas determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). However, if no reasoned decision from the highest state court exists, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *Id.* at 805-06. *See Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010) (holding that the state court of appeal's decision on direct appeal was the relevant state-court decision for purposes of the AEDPA standard of review where state supreme court had denied discretionary review of the decision on direct appeal). When the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz v. Hazey*, 533 F.3d 724, 738 (9th Cir. 2008) (en banc).

Here, the California Court of Appeal denied Petitioner's claims in a reasoned decision on direct appeal. (Lodgment No. 2.) Subsequently, the California Supreme Court summarily denied Petitioner's petition for review. (Lodgment No. 4.) Therefore, the California Court of Appeal's decision on direct appeal constitutes the relevant state court adjudication on the merits for purpose of the AEDPA standard of review. (Lodgment No. 2.)

## DISCUSSION

## I.   Exhaustion

A state prisoner must exhaust his state court remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. §§ 2254(b) and (c); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Peterson v. Lampert*, 319 F.3d 1153, 1155 (9th Cir.2003) (en banc). "The exhaustion-of-state-remedies doctrine, now codified at 28 U.S.C. §§ 2254(b) and (c), reflects a policy of federal-state comity, an accommodation of our federal system designed to give the State

an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor,* 404 U.S. 270, 275 (1971) (internal quotation marks, citations and footnote omitted).

The exhaustion requirement is satisfied when "the federal claim has been fairly presented to the state courts." *Picard*, 404 U.S. at 275; *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam). The purpose of the "fair presentation" requirement is to "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon [petitioner's] constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir. 2000), cert. denied, 534 U.S. 839 (2001). Thus, fair presentation requires that Petitioner must present "both the operative facts and the federal legal theory on which his claim is based [to] the state courts [. . . and Petitioner] must have characterized the claims he raised specifically as federal claims." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (citations and internal quotation marks omitted), cert. denied, 546 U.S. 818 (2005). To do so, "the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation." *Id*.

Here, Petitioner raises two grounds for habeas relief:

(1) Pre-charging delay: Petitioner alleges he was denied his "Federal Constitutional right to [a] speedy trial including where there has been a substantial and/or prejudicial delay prior to accusatory pleading," and that the delays resulted in the destruction of exculpatory evidence which violated his rights to due process and fundamental fairness under the Sixth and Fourteenth Amendments. (ECF No. 10 at 6; ECF No. 10-1 at 1-8.)

(2) Post-charging delay: Petitioner alleges he was denied his "Federal Constitutional right to due process under [Sixth] Amendment and fundamental fairness" by the destruction of exculpatory evidence caused by "'unjustified' and 'negligent' delays in an already 'old case'" by the prosecution after he was charged. (ECF No. 10 at 7; ECF No. 10-1 at 1-8.)

The Court finds Petitioner's grounds for relief are exhausted because Petitioner

fairly presented them to the California Supreme Court on discretionary review. Petitioner's first claim filed in state court asserted "the prejudicial delays in both investigating and bringing this matter to trial violated [Petitioner's] federal and state constitutional rights to due process and a speedy trial." (Lodgment No. 1 at 23). In his state brief, Petitioner argued that the prosecution's substantial pre- and post-arraignment delays prejudiced him and violated his rights to a speedy trial and due process under the Sixth and Fourteenth Amendments (citing *Klopfer v. North Carolina*, 386 U.S. 213, 224-25 (1967) and *Barker v. Wingo*, 407 U.S. 514, 530-33. (1972)). (*See* Lodgment No. 3 at 12-18.) Therefore, Petitioner has properly exhausted his claims by fairly presenting every issue raised in his federal petition to the state's highest court on direct appeal.[2]

## II.  Pre-charging Delay (Claim one)

Petitioner alleges in claim one that he was denied his "Federal Constitutional right to [a] speedy trial including where there has been a substantial and/or prejudicial delay prior to accusatory pleading." (ECF No. 10 at 6.) He contends the pre-charging delay resulted in the destruction of exculpatory evidence in violation of his rights to fundamental fairness and due process under the Sixth and Fourteenth Amendments. (ECF No. 10-1 at 1-7.) Additionally, Petitioner alleges that his due process rights were violated when the state court failed to properly apply the state statute of limitations as to count 13 (Chris Miller's charge). (*Id*. at 8.) Finally, under claim one, Petitioner contends that the pre-charging delay resulted in violation of his right to a speedy trial. (*Id*. at 2-4.)

Respondent answers that the state court correctly found that Petitioner "fails to

---

[2] After Petitioner filed his FAP, Respondent filed a motion to dismiss the petition, arguing that Petitioner had failed to exhaust his state court remedies as to some of the grounds raised in his FAP. (ECF No. 14-1 at 3.) Respondent argued that Petitioner had raised the following unexhausted grounds: (1) the prosecution failed to gather exculpatory evidence from his storage unit before the documents were destroyed, (2) the prosecution singled him out for prosecution while ignoring the crimes committed by the prosecution witnesses and filed charges against him it knew were false, and (3) the prosecutor obstructed justice. In his opposition to the motion, Petitioner expressly denied raising those grounds, despite the grounds being argued in his FAP. (ECF No. 16 at 4.) Subsequently, this Court found that "assuming that [Petitioner] originally intended to assert claims based on the three grounds raised in the Attachment section of the FAP, he has now abandoned those claims." (ECF No. 18 at 4.)

overcome the relitigation bar of the . . .  AEDPA and is precluded from habeas relief because he has failed to show that a state-court decision on the merits was (1) 'contrary to' an already existing and clearly established Supreme Court holding; (2) involved an unreasonable application of such a holding; or (3) was based on an unreasonable determination of the facts in light of the evidence before the state court."  (ECF No. 19 at 2.)

### A.    Additional Background

The prosecution learned that Bovensiep may have committed a crime on December 30, 2009, when George Kneeshaw filed a report with the sheriff's department. It is unclear when the sheriff's department referred the matter to the DA. The prosecutor represented to the court that the DA received the case in April 2010. However, the People's opposition papers and a timeline prepared by Bullard indicate the DA received the matter in February 2010. In May 2010, a deputy district attorney contacted George Kneeshaw about the matter. Thereafter, there was about a four-month delay until the DA referred the matter to Bullard in October 2010.

(Lodgment No. 2 at 8.)

Bullard prepared a detailed timeline showing an active investigation of the matter. After Bullard received the matter she immediately started interviewing witnesses and securing documents. In 2010, Bullard asked for assistance from Steven Papet, an investigative auditor with the California Department of Justice, because she knew the matter was going to be "document heavy." In July 2011, Bullard e-mailed Papet that the DA was ready to file as soon as he finished his analysis. However, the investigation then led to the discovery of additional victims. In June 2012, Bullard learned that Collings and Taylor might be victims. Through that interview Bullard learned that about Stevens and Allen and interviewed them in July 2012. Thus, the DA was discovering additional victims six months before it filed charges against Bovensiep.

(*Id*. at 11.)

Before trial, Bovensiep sought to dismiss the case based on violation of his rights to due process and speedy trial, claiming the delay resulted in the loss of bank documents [account prior to December 21, 2007,] destroyed in the normal course of business and the loss of all records he kept in a storage

12

facility [in September 2013 when a storage unit he had leased was seized for nonpayment].

(*Id*. at 5.)

Bovensiep argued below that the bank records and the records in the storage facility would have shown he used the victim's funds in the normal course of his real estate business, and that he told some of the victims that he took their money not to lend to third parties, but to keep his businesses afloat.

(*Id*. at 8.)

The trial court deferred consideration of the motion until after trial, so as to better assess any resulting prejudice to Bovensiep. Following trial, Bovensiep again moved to dismiss the action based on the alleged constitutional violations.

(*Id*. at 5-6.)

The prosecutor speculated that the unavailability of an investigator caused [a four-month delay until the DA referred the matter to Bullard in October 2010]. [B]ut [the prosecutor] presented no evidence on the issue. On this basis alone, the trial court properly found this four-month delay unjustified. The trial court concluded, however, that this unjustified delay did not cause the missing documents; thus, Bovensiep was not prejudiced by the delay. Substantial evidence supports this conclusion.

(*Id*. at 8.)

The court noted that by the People's own admission, the case had "sat around" from April or May 2010 to October 2010. Nonetheless, it concluded this unjustified delay did not result in any prejudice as this delay did not cause the missing documents. The trial court found that the great age of the case was primarily attributable to how long it took the victims to discover Bovensiep's possible criminal activities and bring him to the attention of law enforcement.

(*Id*. at 6.)

## B.    Denial of Due Process

Petitioner claims that his due process rights were violated by pre-charging delay that impaired his ability to properly defend against the charges.  (ECF No. 10-1 at 1-8.) Respondent answers that the state court reasonably rejected the claim that the pre-

charging delay violated Petitioner's due process rights.  (ECF No. 19-1 at 11.)

### 1.    Denial of Due Process Based on Destruction of Exculpatory Evidence

Petitioner argues that his due process rights were violated by pre-charging delay that caused destruction of exculpatory documents (bank records and the records in the storage facility), which would have proved his innocent.  (ECF No. 10-1 at 5.)

Respondent answers that substantial evidence supported that Petitioner was not prejudiced by the pre-charging delay and that the "delay was due to the prosecution taking a reasonable amount of time to investigate and gather evidence to support a complex case."  (ECF No. 19-1 at 17.)

### i.    Petitioner's Allegations

Petitioner contends the state court erred in finding that the pre-charging delay, which was not attributable to him, was non-prejudicial.  (ECF No. 10-1 at 1-8.)  He claims that he would have been found not guilty but for the destruction of evidence caused by pre-charging delays attributable to the prosecution.  (*Id*.)  Petitioner contends that "[t]he timeline, prepared by the prosecution, shows working on the case for only 65 days of a [three]-year investigation. This makes the 'delay' [two and half] years or more." (*Id*. at 3.)  Petitioner argues that "[t]he prosecution's 'significant delay' allowed the destruction of the petitioner's documents that had been in petitioner's business storage unit" and of the Petitioner's bank documents which are routinely destroyed every seven years.  (*Id*. at 2.)  Petitioner further alleges that "the prosecution had all the information and the petitioner had a reasonable assumption that the prosecution would subpoena and collect all evidence.  Petitioner argues that the documents, assumed collected, would prove his innocence" and that the storage facility destroyed "95 boxes, 2500 pounds of petitioner's files," which "support[s] the proof of client files located in storage ignored by the prosecution."  (*Id*.)  Petitioner alleges that he "was able to reproduce some [of the destroyed documents] from other sources," and that these "reproduced documents were shown as proof of Petitioner's innocence, and he was acquitted of those relevant

14

17-cv-0074-GPC-AHG

charges."  (*Id.*)

## ii.    Clearly Established Federal Law

A court must utilize a two-prong test for determining whether pre-charging delay has risen to the level of a denial of due process.  *United States v. Lovasco*, 431 U.S. 783, 789-90 (1977).  Under the first prong, the defendant must prove that "actual prejudice" resulted from the pre-charging delay.  *Id*.  *See also United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985) (petitioners who allege a violation of their Fifth Amendment right to due process based on pre-charging delay, have "a heavy burden to prove" that the delay caused "actual," "definite," and "non-speculative" prejudice).

Subsequent to the establishment of the actual prejudice, the court must weigh the length of the pre-charging delay against the reason for the delay.  *Lovasco*, 431 U.S. at 790.  Due process requires dismissal of the indictment if it is shown that the pre-charging delay caused substantial prejudice to the defendant's right to a fair trial and that the delay was "an intentional device to gain tactical advantage over the defendant."  *United States v. Marion*, 404 U.S. 307, 324 (1971).  "Investigative delay" is fundamentally unlike delay undertaken by the prosecution "solely to gain tactical advantage over the defendant."  *Lovasco*, 431 U.S. at 795.  A prosecutor is abiding by "elementary standards of fair play and decency," rather than deviating from them, "if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt."  *Id*.  The Court held that "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt."  *Id*. at 791.  To impose a duty "to file charges as soon as probable cause exists but before [the prosecutor] is satisfied [he or she] will be able to establish the suspect's guilt beyond a reasonable doubt[,] . . . would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself."  *Id*. at 791.

"To prosecute a defendant following investigative delay does not deprive the defendant of due process, even if his defense might have been somewhat prejudiced by

17-cv-0074-GPC-AHG

the lapse of time." *Id*. at 796.  *See also New v. Uribe*, 532 F. App'x 743, 744 (9th Cir. 2013) (state appellate court did not unreasonably apply clearly established federal law when concluding that the pre-charging delay of thirty years had not violated defendant's due process rights).

Moreover, "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *Lovasco*, 431 U.S. at 790.  Likewise, "[j]udges are not free, in defining "due process," to impose on law enforcement officials their "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 170 (1952)).  Rather, the Supreme Court has explained that "our task is more circumscribed." *Lovasco*, 431 U.S. at 790.  Federal courts "are to determine only whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Id.* (internal citations and quotation marks omitted).  Such determinations require case-by-case consideration.  *See Lovasco*, 431 U.S. at 796-97; *Marion*, 404 U.S. at 324-25.

### iii.    The State Court's Ruling

On direct appeal, the California Court of Appeal denied Petitioner's claim that the pre-charging delay violated his due process rights and the California Supreme Court summarily denied Petitioner's petition for review.  (Lodgment Nos. 2, 4.)  Therefore, this claim was exhausted on direct appeal.  Accordingly, this Court looks through to the reasoned decision of the California Court of Appeal as the relevant state court adjudication on the merits for purpose of the AEDPA standard of review.

In making its determination regarding this claim, the appellate court relied on California authority, holding that a federal due process claim based on pre-charging delay requires that the delay was undertaken to gain a tactical advantage over the defendant.  (Lodgment No. 2 at 7.)  The appellate court held that "if the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation."

16

*Id.*  Additionally, the court relied on the clearly established federal law, *Lovasco*, to weigh the length of the pre-charging delay against the reason for the delay, and concluded that "the trial court did not abuse its discretion in refusing to dismiss the charges against [Petitioner] based on pre-charging delay."  (*Id.* at 11.)

### iv.    Analysis

To determine whether the pre-charging delay violated Petitioner's due process rights, the California Court of Appeal correctly relied on California authority, which had relied on *Lovasco*, stating that prosecuting "a defendant following investigative delay does not deprive the defendant of due process, even if his or her defense might have been somewhat prejudiced by the lapse of time."  (Lodgment No. 2 at 6-7 (citing *People v. Dunn–Gonzalez*, 47 Cal.App.4th 899, 915 (1996)); Lodgment No. 2 at 11 (citing *Lovasco*, 431 U.S. at 796).)  The appellate court explained:

> The task of the reviewing court is to determine whether pre-charging delay violates the fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency.  Prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.

(Lodgment No. 2 at 6.)  Relying on California authority, the appellate court employed a three-part test to determine whether Petitioner's due process right to a fair trial had been violated because of pre-charging delay: "(1) the defendant must show that he has been prejudiced by the delay, whereupon (2) the burden shifts to the People to justify the delay, and (3) the court balances the harm against the justification."  (*Id.* at 7.)  Further, the court held "[w]hether a defendant met the initial burden of showing prejudice is a factual question for the trial court."  (*Id.* at 7.)

To determine whether Petitioner was prejudiced by the pre-charging delay, the court of appeal considered numerous factors, including the actual cause of the destruction of the documents.  (*See id.* at 8-11.)  After reviewing all of the factors, the court found that substantial evidence supported that Petitioner was not prejudiced by the delay.  (*See*

*id.* at 9.)  As to the cause of the destruction of the petitioner's documents that were in petitioner's storage unit, the appellate court noted the following factors.  First, the elateate court noted that the records from the storage facility showed that Petitioner habitually failed to timely pay the rental fee "from June 2008 until the time the storage facility notified him in March 2013 that the stored property would be sold."  (*Id.* at 9.  *See also* CT 576-83.)  This evidence counters Petitioner's argument that the documents in the storage unit were destroyed as a result of the delays in the prosecution of the action.  As the records from the storage facility show, since June 2008, when Petitioner rented the storage unit, he continuously received lien notices and auction warnings due to his habitual failure to pay the rental fee.  (*See* CT 559-82.)

Second, the appellate court noted that the "documents in the storage facility went to auction in August 2013, but were not actually destroyed until September 2013."  (*Id.* at 9.)  Therefore, from January 2013, when Petitioner was charged, to September 2013, when the documents were destroyed, Petitioner had nine months to recover the documents.  However, Petitioner failed to recover the documents or inform the prosecution of the importance of these documents before the storage facility had them destroyed.  Therefore, the pre-charging delay is not the cause of the destruction of the documents in the storage unit but Petitioner's failure to recover the documents, until nine months after the charges were filed against him, is the actual cause of the documents' destruction.

Third, the "[n]otes from the storage facility show that Bovensiep intentionally allowed the contents of the unit to go to auction."  (*Id.* at 9. *See also* CT at 576.)  The notes indicate that on May 11, 2013, during a phone conversation between Petitioner and the storage facility, Petitioner stated that "he was going to let unit go to auction."  (*See* CT at 576.)  This evidence indicates Petitioner's deliberate failure to recover the documents, and shows that Petitioner's own intentional decision was the cause of the destruction of the documents in the storage unit.

Fourth, since Petitioner was arrested on January 29, 2013, and interviewed the

18

following day, he "had adequate time to inform the prosecution of the importance of these documents before the storage facility had them destroyed [in September 2013]." (*Id*. at 9.)  This finding is supported by the fact that Petitioner had nine months to inform the prosecution but instead intentionally decided to let the storage unit go to auction.

Therefore, based on the above factors the appellate court properly held that "[t]he trial court correctly found that any pre-charging delay did not result in the destruction of the storage facility documents." (*Id*. at 9 (citing *People v. Cowan*, *supra*, 50 Cal.4th at p. 432 ("a suspect who, knowing of police interest, fails to preserve alibi evidence in his control, cannot complain that a delay in charging violated his due process rights")).)

As to the destruction of bank records, the appellate court considered the fact that although Petitioner hoped to rely on the bank records and the records in the storage facility to establish that "he used the victim[s'] funds in the normal course of his real estate business, and that he told some of the victims that he took their money not to lend to third parties, but to keep his business afloat," his confessions to the prosecutor contained strong evidence to the contrary. (Lodgment No. 2 at 8, 10.)  For example, the court noted that (1) Petitioner "admitted to [the prosecutor] that he took about $55,000 from the 835 property as loans for himself or his business that he never repaid"; (2) Petitioner "admitted taking money from certain victims telling them the funds would be used as loans to needy third parties, but that he used these funds to keep the condominiums afloat"; (3) Petitioner "stated that things started to 'snowball( )' as he was borrowing from one individual to pay another"; (4) Petitioner "conceded that when the victims confronted him about the money, he lied to them with false stories because he had already spent the money to keep everything afloat." (*Id*. at 10.)  In his Objections to the Report, Petitioner argues that "[n]ot one piece of written evidence supporting the respondent theory of borrowing money under false pretense was ever submitted." (ECF No. 25 at 7.)  However, Petitioner's own statements, as mentioned above, contradict this. To further examine the record regarding trial court's finding that Petitioner did not suffer actual prejudice, the appellate court noted that Petitioner's statements to the prosecutor

17-cv-0074-GPC-AHG

"supported an inference that he took some of the money (1) knowing he would not be able to repay it, supporting theft by embezzlement, or (2) based on false representations that he would be loaning the money to needy people, supporting theft by false pretense." (Lodgment No. 2 at 10.)

The appellate court further found that "[e]ven assuming the loss of bank records during the investigation of the case prejudiced [Petitoner], the justifiable investigative delay outweighed [Petitioner]'s showing of prejudice." (*Id*. at 9.) In reaching this conclusion, the court cited to the investigation timeline provided by the prosecution and held "[t]he evidence supports the trial court's conclusion that once the DA assigned the matter to Bullard, the time required to investigate justified any delay in charging [Petitioner]." Thus, in accord with *Lovasco*, the appellate court carefully weighed the prejudice to Petitioner against the justifications for the delay and found that, because the justifications outweighed the prejudice, the pre-charging delay did not amount to a due process violation. (Lodgment No. 2 at 11.) Accordingly, the appellate court concluded that "the trial court did not abuse its discretion in refusing to dismiss the charges against [Petitioner] based on pre-charging delay." (*Id*.)

To determine whether pre-charging delay had risen to the level of a denial of due process, the appellate court began by conducting a thorough examination of the investigation timeline provided by the prosecution, and found that the prosecution "[had] prepared a detailed timeline showing an *active* investigation of the matter." (Lodgment No. 2 at 11.) (emphasis added). The appellate court noted that "after [the prosecutor] received the matter she *immediately* started interviewing witnesses and securing documents." (*Id*.) emphasis added). The appellate court further explained that because the prosecutor knew that the case was going to be "document heavy," she asked for assistance from an investigative auditor with the California Department of Justice. (*Id*. at 11.) The investigation timeline shows that the prosecutor interviewed eight individuals regarding the case from October 1, 2009, when the prosecutor received the case, to December 1, 2010, when the prosecutor consulted the auditor. This supports the state

court's finding that the timeline showed an active investigation of the matter and that the prosecutor immediately started interviewing witnesses and securing documents after she received the matter.  The court further noted that in July 2011, the prosecutor e-mailed the auditor stating that "the DA was ready to file as soon as he finished his analysis. However, the investigation then led to the discovery of additional victims." (*Id*. at 11.) In June 2012, six months before the charges were filed against Petitioner, the prosecutor discovered additional victims, learning that Collings and Taylor might be victims. (*Id*. at 11.)  It should be noted that even after Petitioner was charged, the prosecutor continued to interview witnesses and acquire additional evidence regarding the matter.  This shows that as the prosecutor testified and as the state court correctly found, the matter was "document heavy," thus it required that the prosecutor spend more time gathering all of the relevant evidence.

Accordingly, the state court correctly held that the detailed timeline prepared by the prosecutor showed an active investigation of the matter, and that the only unjustified pre-charging delay, the four-month delay in referring the case to the prosecutor, was not prejudicial.

In addition to the appellate court's reasoning, no actual prejudice to the conduct of the defense is alleged or proved, by the Petitioner, and there is no showing that the Government intentionally delayed to gain some tactical advantage over Petitioner. Petitioner argues that "[s]olid proof that allowing those documents destroyed in storage, would lead to acquittal, and was the actual reason the prosecution ignored and avoided those documents and created prejudice." (ECF No. 10-1 at 2.)  However, Petitioner's argument is speculative, and Petitioner proffers no evidence that either the prosecution or law enforcement intentionally delayed in commencing prosecution for the purpose of prejudice to the defense, or in spite of a known risk of prejudice to the defense.

As the appellate court noted, records form the storage facility show that Petitioner's non-payment of the rental fee, not the prosecution's alleged intentional delay, caused the destruction of the documents in the storage facility.  From January 29, 2013,

17-cv-0074-GPC-AHG

when Petitioner was arrested until September 2013, when the documents in the storage facility were destroyed, Petitioner had nine months to recover the documents in the storage facility that would have allegedly exculpated him.  Petitioner failed to pay for the rental fee, recover the documents, or inform the prosecution about the existence of the documents in the storage facility.

Further, the storage facility's record show that Petitioner habitually failed to timely pay the rental fee from June 2008 until the time the storage facility notified him in March 2013 that the stored property would be sold due to nonpayment.  Nine months lapsed after Petitioner was charged before the documents were destroyed by the storage facility.  Accordingly, even assuming that the pre-charging delay was unreasonable, the destruction of the documents in the storage facility was not caused by the pre-charging delay but it was caused by Petitioner's continued non-payment of the rental fee before *and after* he was charged.

Moreover, Petitioner alleges that "[p]rejudice [was] caused and proved, as re-creation of some documents from storage proved inconsistent with relevant witness testimony and petitioner was acquitted of those relevant charges based on those documents."  (ECF No. 10-1 at 3.)  However, Petitioner fails to carry his "heavy burden" to prove that the pre-charging delay caused "actual," "definite," and "non-speculative" prejudice.  *Moran*, 759 F.2d 777 at 782.  Petitioner cannot establish that the destruction of his documents was prejudicial because, as explained above, the documents would not have acquitted him of the charges on which he was convicted.

Additionally, Petitioner argues that "[t]he [state] [c]ourt ruled clearly that the delay was caused by prosecution's 'unjustified' negligence,' and that 'definitely' documents were 'not available.'"  (ECF No. 10-1 at 3.)   However, Petitioner misinterprets the state court's finding.  The state court finding of unjustified delay pertains only to the four-month delay from May 2010, when the District Attorney's office contacted George Kneeshaw (the victim who filed a report with the sheriff's department) until February 2010, when the matter was referred to the prosecutor.  (*See* Lodgment No. 2 at 8.)  The

state court found the four-month delay unjustified because the prosecutor did not present evidence supporting her speculation that the unavailability of an investigator had caused the delay. (*Id*. at 8.)  The state court's finding of unjustified delay does not pertain to the entire pre-charging process.  Moreover, the state court concluded that even the unjustified four-month delay did not cause the missing documents; thus, Petitioner was not prejudiced by the delay.  (*Id*. at 9.)  As the appellate court noted "[t]he trial court found that the great age of the case was primarily attributable to how long it took the victims to discover Bovensiep's possible criminal activities and bring him to the attention of law enforcement."  (*Id*. at 6.)

Finally, even if petitioner experienced pre-indictment delay, such delay did not violate fundamental concepts of justice.  *See Lovasco*, 431 U.S. at 796 ("to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time").

In sum, the Court finds the appellate state court's rejection of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts.  Even if Petitioner could satisfy the aforementioned standard, he has failed to allege facts which, if true, demonstrate a violation of his federal constitutional rights.  Accordingly, this Court **ADOPTS** the Magistrate Judge's recommendation to **DENY** habeas relief on the due process claim based on destruction of exculpatory evidence.

## 2. Denial of Due Process Based on Violation of State's Statute of Limitations

Petitioner claims denial of due process based on violation of the applicable state statute of limitations.  The California Court of Appeal denied this claim on direct appeal and the California Supreme Court summarily denied Petitioner's petition for review.  (Lodgment Nos. 2, 5.)  Accordingly, this Court looks through to the reasoned decision of the California Court of Appeal as the relevant state court adjudication on the merits for purpose of the AEDPA standard of review.

Petitioner claims that "Miller's charge, count 13 was outside of the statute of limitations," because "Miller wrote a letter to probation relating to sentencing after trial . . . clearly stat[ing], 'I realized I was scammed . . . in 2007" and therefore, the prosecution, which began in February 2013, was barred by the four-year statute of limitations. (ECF No. 10-1 at 8.) Petitioner's claim is that the state court failed to properly apply the state statute of limitations based on the facts of his case. (*Id*.) Petitioner argues that his due process rights were violated when the state court convicted him of count 13 (Miller's charge) that was knowingly filed by the prosecution "outside of the statute of limitations." (*Id*.) However, Petitioner does not cite, nor is the Court aware, of any "clearly established" Supreme Court precedent that due process prohibits a conviction based on conduct occurring outside a state's statute of limitations.

A petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.1996). Although the FAP references the Fifth and Fourteenth Amendments of the U.S. Constitution, Petitioner's claim pertains to the California state court's application of the statute of limitations. "[A]s a matter of constitutional law . . . statutes of limitation go to matters of remedy, not to destruction of fundamental rights." *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945). Accordingly, "a state court's failure properly to apply a state statute of limitations does not violate due process or, indeed, any other provision of the Constitution or a federal statute." *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000). In other words, "a state's misapplication of its own statute of limitations does not violate federal due process per se." *Belvin v. Addison*, 561 Fed. Appx. 684, 686 (10th Cir. 2014) (unpublished decision, citing *Loeblin*). Numerous courts have held that such a claim cannot lead to habeas relief. *See, e.g., Monplaisir v. Perez*, 2015 WL 1792378, at *3 (C.D. Cal. Apr. 14, 2015); *Gadlin v. Cate*, 2014 WL 3734618, at *14 (C.D. Cal. July 25, 2014) (citing *Loeblein*); *Villanueva v. Frauenheim*, 2014 WL 4245914, at *6 (C.D. Cal. Apr. 7, 2014), report and recommendation adopted, 2014 WL 4244257 (C.D. Cal. Aug. 22, 2014) (same); *Cumplido v. Foulk*, 2014 WL

462842, at \*5 (C.D. Cal. Feb. 4, 2014) (same); *Maldonado v. McEwen*, 2012 WL 3762484, at \*5 (C.D. Cal. July 3, 2012), report and recommendation adopted, 2012 WL 3762477 (C.D. Cal. Aug. 24, 2012) (same).  Accordingly, any allegation that a prosecution was barred by a state statute of limitations is an issue of state law, and a federal habeas court has no authority to re-examine a state court's determination of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  A federal court cannot grant habeas relief "for errors of state law[. I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Id*. at 67.

The California Court of Appeal's determination of state law is therefore binding on the Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law announced on direct appeal of challenged conviction binds a federal court sitting in habeas corpus*."); Hicks v. Feiock*, 485 U.S. 624, 629 (1988) (even determination of state law made by intermediate appellate court must be followed).  The appellate court expressly determined that the indictments were timely under the applicable statute of limitations.  (Lodgment No. 2 at 23.)  The appellate court found that "there was substantial evidence for the jury to reject [Petitioner's] argument" that the charges were not brought within the four-year statute of limitations.  (*Id*. at 16.)  The appellate court rejected Petitioner's argument that "had the victims investigated [the matter], they would have discovered" facts, which would have allowed them to "know that a crime had potentially occurred before February 13, 2009.  (*Id*. at 15.)  The court reasoned that "[e]ven assuming, however, that each victim had done some investigation, the testimony of [Petitioner's] own expert suggested such an investigation would not have led the victims to believe a crime had been committed.  (*Id*.)  After thoroughly examining all of the facts pertaining to each challenged count, the appellate court found that "substantial evidence supported the jury's implied finding that the statute of limitations had not expired for the challenged counts."  (*Id*. at 23.)

Under *Estelle*, the California Court of Appeal's determination of state law is binding and Petitioner's claim as to the application of the statute of limitations is not

17-cv-0074-GPC-AHG

reviewable in this federal habeas proceeding.  Additionally, Petitioner fails to show that the California Court of Appeal's decision was an objectively unreasonable application of clearly established federal law.  Even if Petitioner had identified clearly established federal law that protects against criminal convictions after the expiration of the statute of limitations, he would still fail to establish that the state court misapplied federal law or committed some constitutional violation.  As the state appellate court correctly pointed out, due to Petitioner's position of trust and close relationship with the victims, it was harder for the victims to believe a crime had been committed, which suspends the running of the statute of limitations.  (*Id*. at 15-16.)

Petitioner has not adequately alleged that the state court committed any error in interpreting the statute of limitations or that this has caused a prejudicial pre-charging delay.  Petitioner's due process argument regarding the statute of limitations does not raise a federal question that this Court can reach under AEDPA.  Accordingly, the Court finds the state court's adjudication of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. Therefore, this Court **ADOPTS** the Magistrate Judge's recommendation to **DENY** habeas relief on the statute of limitations claim.

### 3.     Denial of Right to a Speedy Trial

Petitioner claims that his Sixth Amendment right to speedy trial was violated by pre-charging delay that impaired his ability to defend against the charges. (ECF No. 10-1 at 1-7.)  To assert that his right to a speedy trial was violated because of a pre-charging delay, Petitioner cites *Barker v. Wingo*, 407 U.S. 514 (1972), arguing that "[t]he timeline, prepared by the prosecution, shows working on the case for only 65 days of a [three]-year investigation" thereby creating a delay of at least two and a half years.  (*Id*. at 3.) Additionally, Petitioner argues that "[t]he [c]ourt ruled clearly that the delay was caused by prosecution's 'unjustified' 'negligence,' and that 'definitely' documents were 'not available.'"  (*Id*.)  Petitioner further alleges to have asserted his right to a speedy trial, and that he suffered prejudice as the delay's result.  (*Id*.)

Respondent counters that "[t]he state court correctly held the federal right to a speedy trial attaches *only after an arrest* or the filing of an indictment or information." (ECF No. 19-1 at 20.)

### i.    The Clearly Established Federal Law

The speedy trial provision of the Sixth Amendment does not apply to pre-charging delay. *United States v. Marion,* 404 U.S. 307, 320-21 (1971) (holding that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."). "Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Marion*, 404 U.S. at 320.

"The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the *accused*." *Barker v. Wingo*, 407 U.S. 514, 515 (1972) (emphasis added). The Supreme Court has declined to extend the reach of the speedy trial provision of the Sixth Amendment to the period prior to arrest. *Marion*, 404 U.S. at 321. The Supreme Court has held "as far as the Speedy Trial Clause of the Sixth Amendment is concerned, [a lengthy preindictment] delay is *wholly* irrelevant." *Lovasco*, 431 U.S. at 787 (emphasis added).

### ii.    The State Court's Ruling

This claim was exhausted on direct appeal. The California Court of Appeal denied this claim on direct appeal and the California Supreme Court summarily denied Petitioner's petition for review. (Lodgment Nos. 2, 5.) Accordingly, this Court looks through to the reasoned decision of the California Court of Appeal as the relevant state court adjudication on the merits for purpose of the AEDPA standard of review.

In making its determination regarding this claim, the appellate court relied on California authority, holding that "[d]elay in charging a defendant after commission of an

alleged crime (pre-charging delay) does not implicate speedy trial rights." (Lodgment No. 2 at 5.)  Additionally, the court relied on the clearly established Federal law, *Marion*, to conclude that "[t]he federal right to a speedy trial attaches only after an arrest or the filing of an indictment or information, although California extends the right by holding that it attaches after a complaint has been filed." (*Id*.)  Accordingly, the court did not consider any facts prior to the arrest in ruling on Petitioner's speedy trial violation due to pre-charging delay.  (*See id*.)

### iii.    Analysis

In this case, Petitioner was not arrested, charged, or otherwise subjected to formal restraint prior to the issuance of an arrest warrant and his subsequent arrest on January 29, 2013.  (*See* Lodgment No. 2 at 8.)  It was this event, therefore, that transformed Petitioner into an "accused" defendant subject to the speedy trial protections of the Sixth Amendment.  Therefore, *Barker* factors do not apply to a claim of violation of the right to a speedy trial caused by pre-charging delays. Petitioner incorrectly applies *Barker* factors to this claim. However, to determine whether the pre-charging delay violated Petitioner's right to a speedy trial, the California Court of Appeal correctly relied on the clearly established Federal law, *Marion*, and properly declined to extend the reach of the speedy trial provision of the Sixth Amendment to the period prior to Petitioner's arrest.

Accordingly, the Court finds the state court's adjudication of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  Therefore, this Court **ADOPTS** the Magistrate Judge's recommendation to **DENY** habeas relief on denial of right to a speedy trial claim based on pre-charging delay.

### III.   Post-charging Delay: Denial of Right to a Speedy Trial (Claim two)

Petitioner claims that his Sixth Amendment right to speedy trial was violated by post-charging delay that impaired his ability to defend against the charges. (ECF No. 10-1 at 2.)  Specifically, he alleges that he was denied his due process rights as a result of "'unjustified' and 'negligent' delays in an already 'old case'" by the prosecution after he

was charged.  (ECF No. 10 at 7; ECF No. 10-1 at 1-8.)  Respondent counters that the state court reasonably rejected the claim that the post-charging delay violated Petitioner's right to speedy trial because Petitioner himself was responsible for the delays and waived his speedy trial right by requesting numerous delays.  (ECF No. 19-1 at 18-19.)

### A.    Clearly Established Federal Law

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."  U.S. Const. amend VI.  A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment and imposed by the Due Process Clause of the Fourteenth Amendment on the states.  *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).  The Supreme Court has not devised a per se rule to determine whether the right to a speedy trial has been violated.  Instead, courts must apply a flexible functional analysis, and consider and weigh the following factors in evaluating a speedy trial claim: (1) "whether [the] delay before trial was uncommonly long," (2) "whether the government or the criminal defendant is more to blame for that delay," (3) "whether, in due course, the defendant asserted his right to a speedy trial," and (4) "whether he suffered prejudice as the delay's result."  *Doggett v. United States*, 505 U.S. 647, 651 (1992); *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  As the Supreme Court explained in its seminal decision in *Barker,* none of the four factors are either a necessary or sufficient condition for finding a speedy trial deprivation.  *Barker*, 407 U.S. at 533.  They are related factors and must be considered together with such other circumstances as may be relevant. *Id.* at 533.  *Barker* adopted a "difficult and sensitive balancing process" through which "the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 533.

### B.    The State Court's Ruling

On direct appeal, the California Court of Appeal denied Petitioner's claim that the post-charging delay violated his right to a speedy trial and the California Supreme Court summarily denied Petitioner's petition for review.  (Lodgment Nos. 2, 4.)  Therefore, this claim was exhausted on direct appeal.  Accordingly, this Court looks through to the

reasoned decision of the California Court of Appeal as the relevant state court adjudication on the merits for purpose of the AEDPA standard of review.

To determine whether the post-charging delay violated Petitioner's right to a speedy trial, the California Court of Appeal relied on California authority, *People v. Wilson*, 60 Cal. 2d 139, 146 (1963), stating that "the constitutional or statutory right to a speedy trial may be waived if not asserted prior to commencement of trial." (Lodgment No. 2 at 5.) The court noted that Petitioner "never sought a dismissal based on post-charging delay." (*Id.*) The court further noted that "the record shows that after charges were filed, [Petitioner] requested numerous continuances of the preliminary hearing and three trial continuances." (*Id.*) Accordingly, the court concluded that "[u]nder these facts, [Petitioner] waived his right to a speedy trial." (*Id.*)

### C.   Analysis

As noted above, AEDPA imposes a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24. Moreover, this substantial deference is at an apex when we are reviewing a state court's application of a broad, general standard because judicial application of a general standard "can demand a substantial element of judgment"; the more general the rule provided by the Supreme Court, the more latitude the state courts have in reaching reasonable outcomes in case-by-case determinations. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Therefore, the state courts' greater leeway in reasonably applying a general rule translates to a narrower range of decisions that are objectively unreasonable under AEDPA. *See id.* Determining whether a defendant's speedy-trial right has been violated requires the application of just such a standard. *Barker* explained that the right to a speedy trial "is a more vague concept than other procedural rights," and it is "impossible to determine with precision when the right has been denied . . . . [A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 521. Therefore, under section 2254(d)(1), the Court is required to give the widest of latitude to

1  a state court's conduct of its speedy-trial analysis.  Accordingly, the Court reviews the

2  California Court of Appeal's decision applying *Barker*'s general principles with

3  increased deference.

### 1.    Length of Delay

5        The first factor of the *Barker* test—length of the delay—is a dual inquiry. First, as

6  a threshold matter, only if the delay is "presumptively prejudicial" need the Court inquire

7  into the remaining *Barker* factors.  *Barker*, 407 U.S. at 530.  Second, "if the accused

8  makes this showing, the court must then consider, as one factor among several, the extent

9  to which the delay stretches beyond the bare minimum needed to trigger judicial

10  examination of the claim." *Doggett*, 505 U.S. at 652.  In examining the first prong of the

11  delay factor, the Ninth Circuit has held that presumptive prejudice is not dispositive;

12  instead, it is simply part of the mix of relevant facts and its importance increases with the

13  length of the delay.  *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003).

14  Depending on the nature of the charges, lower courts have generally found post-

15  accusation delay presumptively prejudicial as it approaches one year. *Doggett*, 505 U.S.

16  at 652 n. 1.  *See also Gregory*, 322 F.3d at 1162 (twenty-two-month delay between first

17  superseding indictment and trial date was presumptively prejudicial but did not weigh

18  heavily in defendant's favor because it was not excessively long).

19        Here, the Court finds that the first *Barker* factor weighs in favor of Petitioner.  The

20  State filled the initial charging document in February 2013.  (CT at 1.)  Two years later,

21  in February 2015, the case was brought to trial.  (CT at 781.)  The Court agrees that the

22  two-year delay is sufficient length of time to require consideration of the remaining

23  *Barker* factors.  *See Doggett*, 505 U.S. at 651-52.  Moreover, in considering the second

24  part of the delay inquiry, the Court finds that the two-year delay exceeds the "bare

25  minimum" for "judicial examination of the claim." *Doggett*, 505 U.S. at 652. *See United*

26  *States v. Lam*, 251 F.3d 852, 856 (9th Cir. 2001) (noting the general consensus among

27  circuit courts is that eight months constitutes a threshold minimum delay triggering a

28  speedy trial right). *Cf. United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (finding

nearly two years delay in bringing the matter to trial was not excessive).  Accordingly, the Court finds that this factor weighs in favor of Petitioner.  The Court now looks to the second, third, and fourth *Barker* factors.

## 2.  Reasons for the Delay

The second prong in the *Barker* analysis is consideration of the reasons for delay. *Barker*, 407 U.S. at 530.  Specifically, the second *Barker* factor asks "whether the government or the criminal defendant is more to blame for that delay."  *Doggett*, 505 U.S. at 651.  Courts generally look to the reasons for the delay in commencing the trial to determine whether those reasons are deliberate, neutral, or valid.  *Barker*, 407 U.S. at 531.  Intentional delays which obtain a strategic advantage for the prosecution are weighed heavily against the government.  *Id.* at 531.  "[A] valid reason, such as a missing witness, should serve to justify appropriate delay."  *Id.* at 531.  "A more neutral reason such as negligence or overcrowded courts should be weighed less heavily, but nevertheless should be considered because the ultimate responsibility for such circumstances must rest with the government rather than the defendant."  *Id.*  On the other hand, "[d]elay attributable to the defendant's own acts or to tactical decisions by defendant's counsel will not bolster a defendant's speedy trial argument."  *McNeely v. Blanas*, 336 F.3d 822, 827 (9th Cir. 2003).  "[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine."  *Barker*, 407 U.S. at 529.  *See also Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (delay caused by continuances requested by the defendant did not violate defendant's speedy trial rights since "delay caused by the defense weighs against the defendant").

Here, Respondent contends that Petitioner "[b]y his own conduct, [] waived any claim to a violat[ion] of speedy trial."  (ECF No. 19-1 at 27.)  Although a two-year delay in this case is substantial, Respondent argues that the delay should be weighed against Petitioner because he relinquished his right to a speedy trial by requesting numerous continuances of the preliminary hearing and trial.  (ECF No. 19-1 at 23-27.)  Petitioner does not refute that he unequivocally waived his speedy trial rights by repeatedly

continuing the preliminary hearing and the trial date.  Petitioner does not assert that the district attorney was responsible for continuing his trial, and he does not deny Respondent's contention that Petitioner was responsible for the continuances.

The record shows that after Petitioner was arraigned, on January 30, 2013, the case was continued from time to time for the next two-years without objection.  (CT at 736-81.)  Petitioner was arrested on January 29, 2013, when the prosecution filed an original complaint.  (CT at 605, 1.)  Due to the prosecution's conflict with the preliminary hearing date set for February 13, 2013, charges were dismissed and, subsequently, re-filed on February 14, 2013.  Petitioner was arraigned on February 15, 2013, and released on bail within ten days and remained free of custody on bond until the verdicts were returned.  (CT at 736-738, 838.)  Consequently, Petitioner waived his statutory time for a preliminary hearing four times by requesting continuances on February 27, 2013, May 1, 2013, August 22, 2013, and September 18, 2013; a preliminary hearing was finally held on December 9-12, 2013.  (CT at 740, 742, 746, 750-61.)  At the end of the preliminary hearing, Petitioner waived his statutory right to trial within sixty days, and upon defense counsel's request, a trial date was set for May 22, 2014.  (CT at 759.)  On March 7, 2014, Petitioner again waived statutory time for trial, and trial was re-set for August 11, 2014.  (CT at 765.)  On August 4, 2014, Petitioner again continued the trial date until August 18, 2014.  (CT at 767.)  On August 20, 2014, a status conference was set for October 31, 2014, and trial call set for December 2, 2014.  (CT at 768-69.)  However, at the October 31, 2014 status conference, Petitioner again waived his statutory time for trial and upon Petitioner's request, the case was continued until February 3, 2015.  (CT at 770.)  The parties reported for jury trial on February 3, and voir dire of prospective jurors began on February 10.  (CT at 772-81.)  Accordingly, the record shows that from 2013 to 2015, numerous continuances were sought by Petitioner's attorney with Petitioner's consent.  Based on a review of the record as a whole, the Court finds that the two-year delay is attributable to Petitioner because the two-year post-charging delay is a result of defendant's own acts of requesting numerous continuances.  Additionally, Petitioner

17-cv-0074-GPC-AHG

neither asserted his right to a speedy trial nor did he object to any continuances requested by his counsel.  Therefore, *Barker'*s second factor does not support Petitioner's claim because Petitioner, rather than the state, is substantially "more to blame" for the delay.

### 3.    Petitioner's Assertion of the Right

A petitioner's assertion of his speedy trial right is "entitled to strong evidentiary weight in determining whether the [petitioner] [was] deprived of the right."  *Barker*, 407 U.S. at 531-32.  The "failure to assert the right will make it difficult for a [petitioner] to prove that he was denied a speedy trial."  *Id.* at 532.  However, even repeated assertions of a petitioner's speedy trial right "must be viewed in the light of [Petitioner's] other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (finding that defendants' repeated assertions of their speedy trial rights were contradicted by their filings of frivolous petitions in the appellate courts and of repeated and unsuccessful motions in the trial court, which contributed to the delay in their trial).  *See United States v. Lam*, 251 F.3d 852, 858 (9th Cir.), *amended,* 262 F.3d 1033 (9th Cir.2001) (finding defendant bound by his attorney's actions in having sought several continuances, but noting that defendant can preserve his rights to a speedy trial when he expressly asserts his rights and his actions contradict his counsel's).  Petitioner had ample opportunity to object to any of the continuances and to assert his right to a speedy trial but the record does not show that he ever objected.  Nowhere did Petitioner assert his right to a speedy trial because Petitioner never specifically asked for his case to go to trial.  Instead of asserting his right to proceed to trial promptly, the record shows that Petitioner through his counsel asked for several continuances, which caused the post-charging delay.  While Petitioner may have been within his rights to ask for those continuances, he cannot take advantage of the delay that the continuances inevitably and unavoidably caused by now claiming that he was denied his rights to a speedy trial.  Therefore, *Barker'*s third factor does not support Petitioner's claim because Petitioner's failure to assert his right to a speedy trial makes it difficult for Petitioner to prove that he was denied a speedy trial.

/ / /

17-cv-0074-GPC-AHG

### 4.   Prejudice

If a petitioner is responsible for the delay in his trial, then, he carries the heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim. *United States v. Aguirre*, 994 F.2d 1454, 1458 (9th Cir.1993). "*Doggett* holds that we should presume prejudice only if the [petitioner] is not responsible for the delay." *Id.* at 1457. "[However, even] such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett*, 505 U.S. at 655. Accordingly, Petitioner bears the burden of demonstrating actual prejudice under the fourth *Barker* factor because he is responsible for the delay in his trial. Actual prejudice can be shown in three ways: (1) "oppressive pretrial incarceration"; (2) "anxiety and concern of the accused"; and (3) "the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654. "Of these forms of prejudice, the most serious is the last, because the inability of [the accused] adequately to prepare his case skews the fairness of the entire system." *Id.*

Petitioner has failed to make out a successful speedy trial claim because he has not shown precisely how he was prejudiced by the delay between his indictment and trial. Petitioner does not credibly point to any specific damage to his defense stemming from the post-charging delay in his trial. Petitioner cannot assert oppressive pretrial incarceration because, as noted above, he was arraigned on February 15, 2013, and released on bail within ten days and remained free of custody on bond until the verdicts were returned. (CT at 736-738, 838.) Moreover, Petitioner does not claim that his defense was impaired by dimming memories and loss of exculpatory evidence as a result of post-charging delay. The only real prejudice that Petitioner may credibly claim is that the delay caused him anxiety and concern. However, this factor must be balanced and assessed in light of the other *Barker* factors, including the reasons and responsibility for the delay. After a careful review of the record, the Court finds that Petitioner is responsible for the delay in his trial and that he did not appropriately assert his speedy trial rights. His anxiety and concern caused by the two-year, post-charging delay may

weigh in favor of Petitioner, but by itself, it cannot be said to outweigh these other considerations especially given that the numerous continuances sought by Petitioner are largely, if not wholly, to blame for this lapse of time.  Therefore, in light of other *Barker* factors, *Barker*'s final factor of prejudice does not support Petitioner's claim.

Upon weighing each of the *Barker* factors, the Court concludes that although the first *Barker* factor, the length of the delay, about two years from accusatory pleading to the beginning of trial, is considerable, it is outweighed by the second, third, and fourth *Barker* factors.  Petitioner has failed to show prejudice or an excessive delay not attributable to him; therefore, he has failed to prove a violation of his Sixth Amendment right to a speedy trial.  Accordingly, the Court finds the state court's adjudication of this claim, on the basis that Petitioner waived his right to a speedy trial by not invoking it and requesting the delays, is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  Accordingly, this Court **ADOPTS** the Magistrate Judge's recommendation to **DENY** habeas relief as to claim two.

## IV.   CERTIFICATE OF APPEALABILITY

Under AEDPA, a state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability should be issued only where the petition presents "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To obtain a certificate of appealability, a petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  The Court finds that Petitioner has failed to demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim" that Petitioner was denied a constitutional right.  *Id.* Accordingly, after reviewing Petitioner's First Amended Petition, the Court sua sponte

1    **DENIES** a certificate of appealability.

2    **V.**      **CONCLUSION**

3       For all the foregoing reasons, the Court **OVERRULES** Petitioner's Objections,

4    **ADOPTS** the Report and Recommendation, **DENIES** the Petition for Writ of Habeas

5    Corpus, and **DENIES** a certificate of appealability.

6       **IT IS SO ORDERED.**

7

8

9    Dated:  July 28, 2020

10                             Hon. Gonzalo P. Curiel

11                             United States District Judge

17-cv-0074-GPC-AHG